UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| ENUMERAL BIOMEDICAL ) | CHAPTER 11 |
| HOLDINGS, INC., *et al.* ) | CASE NO. 18-10280-FJB |
| ) | |
| Debtors.[1] ) | (*Jointly Administered*) |
| ) | |

## DEBTORS' CHAPTER 11 PLAN DATED FEBRUARY 15, 2018

Enumeral Biomedical Holdings, Inc., Enumeral Biomedical Corp., and Enumeral Securities Corporation (collectively the "Debtors"), each of them a Delaware corporation and debtor in the above-captioned case, propose the following plan pursuant to Section 1121 of the Bankruptcy Code (the "Plan"):

### SECTION 1
### DEFINITIONS

**1.1    General**. Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan. Such meanings shall be equally applicable to both the singular and plural points of such terms. Any term that is not defined in the Plan but that is defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code.

**1.2    Administrative Claim** means that portion of a Claim that is asserted to be, or in the case of an Allowed Claim, has been Allowed as being, entitled to priority under Code Section 507(a)(2).

**1.3    Allowed** means:

(a)    with respect to a Claim other than an Administrative Claim, any Claim: (i) listed in the Schedules and not listed therein as contingent, unliquidated or disputed; or (ii) as to which a proof of claim has been filed on or before the Bar Date and either (A) allowed by Final Order or (B) to which no objection has been filed by the Objection Deadline.

---

[1] The debtors in these jointly administered chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Enumeral Biomedical Holdings, Inc. (6434), Enumeral Biomedical Corp. (9860), and Enumeral Securities Corporation (7157).

  (b)  with respect to an Administrative Claim, (i) an undisputed obligation incurred in the ordinary course as to which payment has been made before the Effective Date, (ii) a Professional Claim that the Bankruptcy Court has allowed pursuant to Section 2.3, or (iii) any other Administrative Claim as to which a request for payment has been filed on or before the Postpetition Bar Date and either (A) no objection thereto has been filed by the Objection Deadline, or (B) such Administrative Claim has been allowed by Final Order.

 **1.4** **Allowed Amount** means, as to any Allowed Claim but subject to Section 7.8:

  (a)  for a Claim other than an Administrative Claim that is (i) listed in the Schedules and not the subject of a proof of claim filed on or before the Bar Date, the amount thereof that the Schedules do not list as contingent, unliquidated or disputed, (ii) the subject of a proof of claim filed on or before the Bar Date and to which no objection has been filed on or before the Claim Objection Deadline, the amount specified in such proof of claim, or (iii) that has been allowed by Final Order, the amount so allowed;

  (b)  for an Administrative Claim other than a Professional Claim (i) that is the subject of a request for payment of administrative expense filed with the Court and served on the Plan Trustee on or before the Postpetition Bar Date, and to which the Plan Trustee has not filed an objection on or before the Claim Objection Deadline, the amount specified in such request, or (ii) that has been allowed by Final Order, the amount so allowed;

  (c)  for a Professional Claim, the amount specified in the Order allowing the Claim.

 **1.5** **Asserted Claim** means (a) a Claim, other than an Administrative Claim, that is the subject of a proof of claim filed on or before the Bar Date; or (b) an Administrative Claim that is the subject of a request for payment of administrative expense or, in the case of a Professional Claim) a fee application, filed and served on the Plan Trustee on or before the Postpetition Bar Date.

 **1.6** **Asserted Amount** means, as to any Asserted Claim but subject to Section 7.8, (a) for a claim other than an Administrative Claim, the amount set forth in the proof of claim therefor, or (b) for an Administrative Claim, the amount set forth in a request for payment of administrative expense or, in the case of a Professional Claim, the fee application therefor.

 **1.7** **Bankruptcy Code** means Title 11 of the United States Code, as in effect with respect to the Case.

 **1.8** **Bar Date** means March 15, 2018, or such later date established by the Bar Order (or by agreement of the Debtors, prior to the Effective Date, or the Plan Trustee from and after the Effective Date) with respect to a particular Claim as the deadline by which a proof of claim therefor must be filed, *provided, however,* that as to any Claim subject to a deadline by which a

2

proof of claim therefor must be filed established by an Order other than the Bar Order, the Bar Date shall be the deadline established by such other Order.

**1.9** **Bar Order** means the Order Fixing Deadline for Filing Proofs of Claim in Chapter 11 Cases entered January 31, 2018 [Docket No. 23], which, *inter alia*, established the Bar Date as the deadline for filing proofs of claim as to certain Claims.

**1.10** **Business Day** means a day other than Saturday, Sunday or a legal holiday defined in Fed. R. Bankr. P. 9006(a) as applicable in Massachusetts.

**1.11** **Case** means the jointly administered case under the Bankruptcy Code pending in the Court as to the Debtors (Enumeral Biomedical Holdings, Inc., *et al.*, Case No. 18-10280).

**1.12** **Case Closing Conditions** has the meaning set forth in Section 6.12.

**1.13** **Case Closing Date** means the date of entry of an Order consisting of a final decree closing the Case pursuant to Code Section 350.

**1.14** **Cash** means payment by check or wire transfer of the Plan Trustee.

**1.15** **Cash Collateral Orders** means all Orders entered pursuant to the Debtors' Motion for Use of Cash Collateral filed on January 29, 2018 [Docket No. 9], or such subsequent motion seeking use of cash collateral as the Debtors might file.

**1.16** **Claim** means a claim, as defined in Code Section 101(5), against any of the Debtors or its property, whether or not asserted.

**1.17** **Code Section** means, except where otherwise indicated, a section of the Bankruptcy Code.

**1.18** **Collateral Agent** means Intuitive Venture Partners, LLC, as collateral agent for the Noteholders under the Intellectual Property Security Agreement with EBHI and EBC as debtors, dated May 19, 2017.

**1.19** **Collateral Proceeds** means all funds that are proceeds of any sale of assets of the Debtors during the Case pursuant to an order specifying that liens on such assets would attach to the proceeds of the sale.

**1.20** **Confirmation Order** means the Order confirming the Plan pursuant to Code Section 1129.

**1.21** **Court** means the United States Bankruptcy Court for the District of Massachusetts (Eastern Division), or any other court with jurisdiction over (a) the Case, (b) any particular matter within the Case pursuant to 28 U.S.C. § 157(c)(1) or (d), or (c) any particular Claim pursuant to 28 U.S.C. §§ 157(b)(5), 959(a) or 1334(c).

**1.22** **Debtors** means EBHI, EBC, and ESC.

**1.23**   **Disallowed** as to any Claim means either (a) disallowed by Final Order, but (in the case of a partially-Allowed Claim) only to the extent so disallowed, (b) not filed by the Bar Date, if applicable, (c) not filed by the Postpetition Bar Date, if applicable, or (d) treated as disallowed pursuant to Section 7.8.

**1.24**   **Distributable Funds** has the meaning defined in Section 5.6(b).

**1.25**   **EBC** means Enumeral Biomedical Corp., debtor in Case No. 18-10281 pending in the Court.

**1.26**   **EBHI** means Enumeral Biomedical Holdings, Inc., debtor in Case No. 18-10280 pending in the Court.

**1.27**   **Effective Date** means the Business Day following the thirtieth (30th) day after entry of the Confirmation Order, provided that the Confirmation Order, as entered, remains in full force and effect.

**1.28**   **ESC** means Enumeral Securities Corporation, debtor in Case No. 18-10282 pending in the Court.

**1.29**   **Estate** means (a) prior to the Effective Date, collectively, the bankruptcy estates of the Debtors, and (b) from and after the Effective Date, the consolidated bankruptcy estate of the Debtors established pursuant to Section 5.9.

**1.30**   **Estate Funds** means, as of any particular time, all cash, cash equivalents, and liquid investments of the Estate, including but not limited to coins, bills, deposit accounts, investment accounts, and marketable securities, including Collateral Proceeds.

**1.31**   **Estate Records** means, as of any particular time, all financial and other business records of the Debtors or the Estate (whether tangible or intangible, whether in paper or electronic or other form, and whether or not in the Debtors' possession as of the Petition Date) having value for informational purposes or reference and having no other material value.  Estate Records shall not include lab notes or other records or data relating to intellectual property or products developed by the Debtors.

**1.32**   **Final Order** means an Order as to which (a) the time has expired within which a proceeding for judicial review (whether by way of rehearing, appeal, *certiorari* or otherwise, but not pursuant to Code Section 1144, Fed. R. Bankr. P. 9024, Fed. R. Civ. P. 60(b) or any similar rule) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such Order has been affirmed by the highest tribunal in which review is sought or such proceeding for review has otherwise been terminated without modification of such Order, and the time has expired within which any further proceeding for judicial review may be commenced.

**1.33**   **General Unsecured Claim** means any Unsecured Claim, including without limitation any Unsecured Claim arising from the rejection or termination of an executory contract or unexpired lease, that is not a Priority Claim or a Subordinated Claim.

4

1.34    **Non-Abandonment Notice** shall mean the notice referred to in Section 5.4.

1.35    **Noteholder Claim** means any Claim of a Noteholder, including a claim based upon the Notes.

1.36    **Noteholder** means a holder of one or more Notes.

1.37    **Notes** means the promissory notes in the aggregate principal amount of $768,200 issued pursuant to the Subscription Agreement between EBHI and the buyers of the Notes dated May 19, 2017.

1.38    **Objection Deadline** means, except as extended or shortened pursuant to Section 7.2(c): (a) in respect of an Administrative Claim, the Business Day after the thirtieth (30th) day following the Postpetition Bar Date; and (b) in respect of any other Claim, the later of (i) the Business Day after the thirtieth (30th) day following amendment of the proof of claim therefor, other than an amendment solely to reduce the amount of such Claim, and (ii) the Business Day preceding the Effective Date.

1.39    **Order** means an order or judgment of the Court.

1.40    **Petition Date** means January 29, 2018.

1.41    **Plan** means this plan, as it may be amended or modified by the Debtors from time to time as permitted in this plan or under the Bankruptcy Code.

1.42    **Plan Expense** means an expense or other liability incurred by the Plan Trustee in performing the Plan Trustee's duties under the Plan, including but not limited to fees and expenses of the Plan Trustee and persons engaged by him pursuant to Section 6.7, but only to the extent that such liability would have been allowable as an administrative expense under Code Section 503(b) if incurred by the Estate before entry of the Confirmation Order.

1.43    **Plan Trustee** means the person serving from time to time as Plan Trustee under the Plan in accordance with Sections 6.1 or 6.2.

1.44    **Postpetition Bar Date** means the Business Day following the twenty-fifth (25th) day after entry of the Confirmation Order.

1.45    **Priority Claims** means Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims.

1.46    **Priority Non-Tax Claim** means that portion of a Claim which is filed, or in the case of an Allowed Claim, has been Allowed, as entitled to priority in accordance with Code Section 507(a)(3)-(7) and (9).

1.47    **Priority Reserve** means the reserve held by the Plan Trustee pursuant to Section 5.6(a).

**1.48    Priority Tax Claim** means that portion of a Claim which is filed, or in the case of an Allowed Claim, has been Allowed, as entitled to priority under Code Section 507(a)(8).

**1.49    Professional Claim** means the Claim of a professional person employed by the Debtors pursuant to Code Section 327 for compensation and/or reimbursement of expenses for services rendered to the Debtors through and including the date of entry of the Confirmation Order.

**1.50    Pro Rata Share** of a particular distribution attributable to a particular Allowed Claim within a group entitled to a *pro rata* share of funds available for distribution to such group, means (a) the total amount of funds that will be the subject of the particular distribution plus all funds that were previously distributed (including reserves for Unresolved Claims) to such group multiplied by a fraction, the numerator of which is the Allowed Amount of the particular Allowed Claim and the denominator of which is the aggregate amount of all Allowed Claims and Unresolved Claims within such group at the time of the particular distribution, *less* (b) the amount of funds from previous distributions received by the holder of such Allowed Claim on account of such Claim.

**1.51    Residual Assets** means, as of any particular time, all assets and property interests of the Debtors of any nature whatsoever (whether tangible or intangible, whether as owner or lessee or licensee or otherwise, and whether disputed or undisputed) other than (a) deposit accounts or other cash equivalents, and (b) Debtors' Records.

**1.52    Schedules** mean the schedules of assets and liabilities filed by the Debtors in the Case, as amended through and including the Effective Date.

**1.53    Section** means a section of this Plan.

**1.54    Secured** means, as to any Claim against a Debtor secured by a Valid lien on property of the Estate, the portion of such Claim equal to the lesser of (a) the full Asserted Amount of such Claim, if Unresolved, otherwise the Allowed Amount (if any) of such Claim, or (b) the value of such property (which, for the avoidance of doubt, in the case of Noteholder Claims means the full amount of the Secured Creditor Fund as of the Effective Date).

**1.55    Secured Creditor Fund** means the net proceeds of the Debtors' disposition of property of the Estate that is subject to the lien of the Collateral Agent, as determined pursuant to Section 5.5.

**1.56    Subordinated Claims** means Claims of the Noteholders and the Collateral Agent, to the extent determined by Final Order to be subordinate and junior in right of payment to General Unsecured Claims.

**1.57    Unresolved** means, as to any Claim, that such Claim is an Asserted Claim but has not been Allowed or Disallowed.

**1.58    Unrestricted Funds** means any and all Estate Funds that are not subject to the lien of the Collateral Agent, including amounts that the Court determines the Plan Trustee may collect from Collateral Proceeds pursuant to Code Section 506(c).

6

**1.59** **Unsecured** means, as to any Claim, the amount thereof other than the amount (if any) that is Secured.

**1.60** **Valid**, as to any lien, refers to whether such lien is valid, binding, enforceable, perfected and not subject to avoidance under any provision of the Bankruptcy Code (including Code Sections 544 through 553) or other applicable law.

## SECTION 2
## TREATMENT OF NON-CLASSIFIED CLAIMS

**2.1** **Administrative Claims**. Subject to Sections 2.2 and 2.3 and except as otherwise agreed by the Plan Trustee and the holder of an Administrative Claim, each Allowed Administrative Claim shall be paid in full in Cash on the Effective Date.

**2.2** **Bankruptcy Fees.** Any Administrative Claim for fees under 28 U.S.C. § 1930 due and payable prior to entry of the Confirmation Order shall be paid in full in Cash on the Effective Date or, in the case of amounts not yet billed by the United States Trustee as of the Effective Date, within ten (10) Business Days after receipt of an invoice therefor. The Plan Trustee's acquisition of control over Debtors' Funds pursuant to Section 5.1 shall not constitute a disbursement for purposes of computing fees payable under 28 U.S.C. § 1930. Fees payable under 28 U.S.C. § 1930 in regard to the Estate shall be conclusively presumed, without need for an Order, to be chargeable to the Secured Creditor Fund under Code Section 506(c) and any amount so charged shall be paid over to the United States Trustee without regard to whether any other Administrative Claims or Plan Expenses are, or are projected to become, outstanding.

**2.3** **Professional Claims.** Professional Claims shall be paid in Cash on the Business Day following entry of an Order allowing an application therefor, *provided, however,* that any retainer securing such claim shall be applied as directed in any applicable Order or, if not so directed by the Court, then as directed by the Plan Trustee in accordance with Section 6.7. The unused portion of any such retainer shall be turned over to the Plan Trustee.

**2.4** **Priority Tax Claims.** Each Allowed Priority Tax Claim shall be paid in full in Cash on the Effective Date.

## SECTION 3
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

**3.1** Claims that are required to be classified under Code Section 1123(a)(1) and interests are hereby classified into the following classes:

(a) *Class 1*, consisting of all Claims of the Noteholders and/or the Collateral Agent, to the extent such Claims are Secured.

(b) *Class 2*, consisting of all Priority Non-Tax Claims.

(c) *Class 3*, consisting of all General Unsecured Claims, other than Claims of Noteholders and/or the Collateral Agent determined by Order to be Subordinated Claims.

(d) *Class 4*, consisting of all Subordinated Claims.

(e) *Class 5*, consisting of all equity interests in the Debtors, including any options, warrants or other agreements for the acquisition of such interests.

## SECTION 4
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**4.1  Class 1 (Noteholders).**  Class 1 is impaired.  In full settlement and satisfaction of all Class 1 Claims, the holders thereof shall be paid *pro rata* from the Secured Creditor Fund pursuant to Section 5.5.

**4.2  Class 2 (Priority Non-Tax Claims).**  Class 2 is unimpaired.  In full settlement and satisfaction of each Allowed Class 2 Claim, the Allowed Amount thereof shall be paid in full in Cash on the Effective Date.

**4.3  Class 3 (General Unsecured Claims).**  Class 3 is impaired.  In full settlement and satisfaction of each Allowed Class 3 Claim, the Plan Trustee shall pay such Claims *pro rata* in accordance with Section 5.6(c)(iii) and (v).

**4.4  Class 4 (Subordinated Claims).**  Class 4 is impaired.  In full settlement and satisfaction of each Allowed Class 4 Claim, the Plan Trustee shall pay such Claims *pro rata* in accordance with Section 5.6(c)(iv) and (v).

**4.5  Class 5 (Equity Interests).**  Class 5 is impaired.  All Class 5 interests shall be deemed cancelled on the Effective Date, subject, however, to Section 5.6(c)(vi).

## SECTION 5
## MEANS OF IMPLEMENTATION

**5.1  Change of Control.**  Upon entry of the Confirmation Order, the Plan Trustee shall assume control of the Debtors and their assets, including the Secured Creditor Fund, other funds of the Debtors and all records of the Debtors.  Notwithstanding Code Section 1141(b), confirmation of the Plan shall not terminate the Debtors' respective bankruptcy estates; rather, all assets of the Debtors' estates shall remain in a single consolidated estate (as provided in Section 5.9) to be administered by the Plan Trustee.  The Plan shall not be deemed to create a trust or any other legal entity for tax or any other purposes.  The Debtors' legal existence shall continue until the Case Closing Date; the assumption of control by the Plan Trustee shall not be deemed a transfer for any purpose, including but not limited to laws and regulations regarding taxes.

**5.2  Debtors' Funds.**  From and after entry of the Confirmation Order, the Plan Trustee shall have control over all funds of the Estate (including the Secured Creditor Fund) and shall be the sole authorized signatory on all deposit accounts of the Estate.

**5.3     Debtors' Records.**  The Plan Trustee shall have possession of and control over all Debtors' Records.  Without the need for an Order, the Plan Trustee may (a) from time to time, discard or otherwise dispose of any records that the Plan Trustee determines are not necessary for administration of the Estate, and (b) upon or after the Case Closing Date, discard or otherwise dispose of any and all remaining records.

**5.4     Residual Assets.**  The Plan Trustee shall determine within sixty (60) days after the Effective Date whether any Residual Assets may have material value.  Except as otherwise stated in a notice filed by the Plan Trustee within such 60-day period (a "Non-Abandonment Notice"), all of the Residual Assets shall be deemed abandoned at the end of such period, and (notwithstanding Code Section 554(d)) the Estate shall have no further interest therein.  The Plan Trustee may, but shall not be required to, discard or otherwise dispose of such abandoned Residual Assets.  Any of the Residual Assets retained by the Plan Trustee pursuant to a Non-Abandonment Notice may later (a) be sold by the Plan Trustee in accordance with Section 6.3(b), or (b) at the discretion of the Plan Trustee, be abandoned in accordance with the procedures of Code Section 554(a) and applicable rules.

**5.5     Secured Creditor Fund.**  The Plan Trustee shall hold the Secured Creditor Fund in one or more deposit accounts separate from Unrestricted Funds.  Subject to Section 2.2, the amount of the Secured Creditor Fund shall at any particular time be the lesser of (a) Collateral Proceeds held by the Estate as of the Effective Date, less such amounts as the Plan Trustee asserts, and the Court determines by Final Order, are chargeable against Collateral Proceeds pursuant to Code Section 506(c), (b) the aggregate Allowed (but not yet paid) and Unresolved amounts of Class 1 Claims, and (c) such amount as the Court estimates by Order as the maximum aggregate amount (i) of Allowed (but not yet paid) Class 1 Claims, and (ii) in which Unresolved Class 1 Claims will be Allowed.  A Pro Rata Share of the Secured Creditor Fund shall be distributed to each holder of a Class 1 Claim on the Effective Date or, if later, the date when such claim is Allowed.  To the extent that the terms of the Plan or any Order reduce the amount required to be held in the Secured Creditor Fund, any amounts in the Secured Creditor Fund exceeding such required amount shall be removed therefrom and thereafter shall irrevocably be, and be held or distributed by the Plan Trustee as, Unrestricted Funds.

**5.6     Unrestricted Funds.**  Unrestricted Funds shall be used as follows:

(a)     **Priority Reserve.**  The Plan Trustee shall at all times set aside in reserve (i) an amount sufficient to pay all unpaid Priority Claims (including, in the case of an Unresolved Claim, the amount claimed by the holder thereof) payable on the Effective Date, and (ii) an amount projected by the Plan Trustee to pay all accrued Plan Expenses and those that may be incurred in the future.  Notwithstanding the foregoing, if sufficient Unrestricted Funds are not available on the Effective date to fund the Priority Reserve in full, then at the discretion of the Plan Trustee, the Priority Reserve need not include on the Effective Date the full (or any) amount (iii) payable to holders of Priority Claims who have agreed to defer payment until funds become available after the Effective Date, or (iv) projected to be or become payable as Plan Expenses, *provided, however,* that if and when

9

Unrestricted Funds become available, the Plan Trustee shall fund the Priority Reserve to the full extent of projected Plan Expenses.

(b) **Distributable Funds.** Unrestricted Funds not held in the Priority Reserve ("Distributable Funds") shall be distributed by the Plan Trustee, on the Effective Date and thereafter as further Distributable Funds (if any) become available, in the order of priority specified in Section 5.6(c) such that when all Claims at one level of priority have been paid or reserved for pursuant to Section 7.2(d), remaining Distributable Funds shall be distributed to the next most senior level of priority.

(c) **Creditor Waterfall.** The order of priority for distribution of Distributable Funds shall be as follows: (i) *pro rata* to holders of Administrative Claims who agreed not to require payment on the Effective Date, (ii) *pro rata* to holders of other Priority Claims who agreed not to require payment on the Effective Date, (iii) *pro rata* to holders of General Unsecured Claims, (iv) *pro rata* to holders of Subordinated Claims, (v) *pro rata* to holders of all Allowed General Unsecured Claims and Subordinated Claims, on account of interest on the Allowed Amount thereof from the Petition Date through the final day of the month preceding payment, at the federal judgment rate, and (vi) if Distributable Funds of not less than $100,000 remain after no Claims remain Unresolved and all amounts required by clauses (i) through (v) have been paid, the Plan Trustee shall distribute such funds *pro rata* to the record holders of common stock of EBHI on the Effective Date, disregarding options, unexercised warrants, and the like.

5.7    **Liens.** From and after the Effective Date, the Debtors' assets (including all funds in the hands of the Plan Trustee) shall be free and clear of all liens, encumbrances, claims and interests, except as follows:

(a) **Cash Collateral Orders.** All liens granted pursuant to Cash Collateral Orders shall survive (subject to Section 7.2) if asserted by the holder thereof, in a specific amount and as to specific assets, by notice filed with the Court and served on the Plan Trustee on or before the Postpetition Bar Date. Except as set forth in any such notice, any liens and other rights conferred by any of the Cash Collateral Orders shall terminate as of the Effective Date.

(b) **Secured Creditor Fund.** Subject to Sections 2.2 and 5.5, all Collateral Proceeds shall be subject to the lien of the Collateral Agent except to the extent that a Final Order (i) determines such lien not to be Valid, or (ii) disallows any or all of the Class 1 Claims.

5.8    **Directors and Officers.** Upon entry of the Confirmation Order, the directors of the Debtors shall be deemed to have resigned, and their resignations will be deemed to have been accepted by the Debtors. Immediately prior to entry of the Confirmation Order, the officers of the Debtors shall be deemed to have been terminated without cause. From and after entry of the

10

Confirmation Order, the directors and officers of the Debtors shall have no further authority or responsibility for the affairs of the Debtors, *provided, however*, that the directors and officers shall, upon the reasonable request of the Plan Trustee, render such assistance as the Plan Trustee might require but shall not be required to make any out-of-pocket expenditure unless assured of reimbursement by the Plan Trustee as a Plan Expense. All liability insurance in effect on the Effective Date under which the Debtors' directors and officers are insureds or otherwise beneficiaries shall be kept in full force and effect, *provided* that no further expenditure by the Estate shall be required to maintain such insurance.

**5.9    Substantive Consolidation.** On the Effective Date, the bankruptcy estates of the Debtors shall be consolidated into a single bankruptcy estate. An Allowed Claim against any of the Debtors, or more than one, shall be a single Allowed Claim against the consolidated Estate for purposes of distributions under the Plan.

**5.10    Notice and Hearing.** Whenever the Plan specifies that Court approval or entry of an Order is required, such approval and entry of an appropriate Order shall be sought by motion under Fed. R. Bankr. P. 9013 and MLBR 9013-1, upon notice to holders of all Unresolved Claims (and, if any, unpaid Allowed Claims) and to the Plan Trustee (if not the movant), or upon such other notice as the Court determines to be appropriate in the particular circumstances.

**5.11    Sale of PD-1 Assets.** The Plan Trustee shall (a) perform any and all remaining obligations of the Estate under such bid as has been approved by the Court pursuant to the Debtor's Motion to Authorize Sale of Property Free and Clear of All Liens, Claims and Other Interests [Docket No. 7], and (b) pay on the Effective Date as an Administrative Expense the Breakup Fee, as defined in the Asset Purchase Agreement dated as of January 26, 2018, by and between EBHI and XOMA US LLC, to the extent due thereunder but not yet paid.

## SECTION 6
## PLAN TRUSTEE

**6.1    Appointment of Plan Trustee.** Keith D. Lowey of Verdolino & Lowey, P.C. shall serve as Plan Trustee. The Plan Trustee shall have the rights, powers and responsibilities set forth in the Plan. The Plan Trustee shall act as an independent fiduciary in the interests of all entities having an interest in the Estate. No bond or other security shall be required of the Plan Trustee except as may be expressly ordered by the Court. Subject to Section 6.10, but notwithstanding any other provision of the Plan, each and every obligation or liability of the Plan Trustee shall solely be chargeable to and collectible from assets of the Estate, and the Plan Trustee shall have no personal liability therefor.

**6.2    Successor Plan Trustee.** If the Plan Trustee at any time resigns, dies, becomes incapable of performing the duties of the Plan Trustee, or is removed by Order entered after notice to the Plan Trustee and a hearing, a successor Plan Trustee shall be appointed pursuant to an Order entered after notice and a hearing.

**6.3    Plan Trustee's Powers.** The Plan Trustee shall have the following powers:

  (a) **Claims.** Acting on behalf of the Estate, the Plan Trustee shall have authority to file objections to Claims and to litigate to final judgment, settle, or withdraw objections to Claims, including objections filed by the Debtors before entry of the Confirmation Order. Notwithstanding Fed. R. Bankr. P. 9019, the Plan Trustee may settle any Unresolved Claim without Court approval, *provided, however,* that any settlement of a Noteholder Claim that entails any portion thereof being an Allowed Class 1 Claim shall require entry of an Order after notice and a hearing.

  (b) **Other Powers.** The Plan Trustee shall have full power and authority to take all actions and execute all documents on behalf and in the name of the Debtors that are necessary or appropriate to administer the Estate and otherwise to implement the Plan without the need for approval by the Court or any party in interest except as specifically required by the Plan. Without limiting the generality of the foregoing, the Plan Trustee shall have all powers that were vested in the shareholders and board of directors of the Debtors prior to the Plan Trustee's appointment. Notwithstanding any provision of the Bankruptcy Code, applicable non-bankruptcy law, or contract, the Plan Trustee shall not be required to seek any vote or assent of any entity, or to seek an Order, for any action taken in administering the Estate consistently with the Plan, except where specifically required by the Plan.

  **6.4** **Funds.** All funds in the hands of the Plan Trustee for more than one (1) day shall be invested in accordance with Code Section 345, except as otherwise ordered by the Court. Any income earned on such funds shall not be allocated to individual Claims but only to the fund (such as the Secured Creditor Fund) in which such funds are held. Funds in the hands of the Plan Trustee shall be deemed to be in the custody of the Court. Because such funds are *in custodia legis*, no entity may acquire any interest in such funds except by Order or the express terms of the Plan. In no event shall any such funds be required to be used for any purpose other than (a) distributions to creditors of the Debtors as expressly required under the Plan, or (b) payment of Plan Expenses.

  **6.5** **Records.** Until the Case Closing Date, (a) the Plan Trustee or his agents shall maintain books and records containing a description of all property of the Estate as well as an accounting of receipts and disbursements, and (b) the Plan Trustee shall preserve such Debtors' Records as are required by applicable law, or are necessary or useful to the Plan Trustee's administration.

  **6.6** **Compensation.** Subject to the procedures of Section 6.8, the Plan Trustee shall be entitled to receive, as a Plan Expense, reasonable compensation for services (including for services rendered prior to entry of the Confirmation Order in preparing to serve as Plan Trustee) at the Plan Trustee's customary hourly rates in effect when such services are rendered, and reimbursement of customary expenses.

  **6.7** **Retention of Professionals.** The Plan Trustee may without need for an Order employ counsel and such other professionals and consultants, and provide them such retainers

for security of payment, as he may reasonably determine to be necessary or appropriate to advise and assist him in the performance of his duties as Plan Trustee. Subject to the procedures of Section 6.8, each such professional shall be entitled to receive, as a Plan Expense, reasonable compensation for services at such professional's customary hourly rates in effect when such services are rendered and reimbursement of customary expenses. No professional or employee of the Debtors shall be barred from providing services to the Plan Trustee and receiving compensation therefor by reason of having served as a professional or employee of the Debtors before entry of the Confirmation Order.

**6.8   Compensation Procedure.**  After the Effective Date, the Plan Trustee shall provide notice to all holders of Unresolved Claims (and, if any, unpaid Allowed Claims) that they may, by so requesting and supplying an email address to the Plan Trustee, receive notice of requests for compensation and reimbursement by the Plan Trustee and professionals employed by the Plan Trustee (the "Compensation Notice List"). Based on responses to such notice, the Plan Trustee shall create the Compensation Notice List and may modify it from time to time by deleting email addresses of holders of Claims that are Disallowed or paid the full amount to which entitled under the Plan. In order to receive compensation and reimbursement of expenses, the Plan Trustee and professionals employed by him (a "Provider") shall generate and retain (in the case of the Plan Trustee) or supply to the Plan Trustee (in the case of a Provider other than the Plan Trustee) a reasonably detailed invoice of time spent and expenses incurred. The Plan Trustee shall give notice thereof to the Compensation Notice List including the Provider's invoice and stating that the amount thereof will be paid unless, within ten (10) Business Days, the Plan Trustee and (in the case of a Provider other than the Plan Trustee) the Provider receives a written objection by the holder of an Unresolved Claim (or, if any, an unpaid Allowed Claim) specifically identifying the basis for the objection and the particular time entries involved. In the case of a Provider other than the Plan Trustee, the Plan Trustee may make such an objection. Upon lapse of ten (10) Business Days after service of an invoice without making or receiving an objection thereto, the Plan Trustee shall pay such invoice. If the Plan Trustee makes or receives a timely objection to a particular invoice, the Plan Trustee shall withhold payment of the portion objected to and promptly pay the remainder of the invoice. If an objection is timely made and the parties are unable to resolve the objection by agreement, then the Provider may seek determination of the objection by filing with the Court a motion to compel payment of the disputed amount. Except as provided by the preceding sentence, Court approval for professional fees constituting Plan Expenses shall not be required. At such time as the Case Closing Conditions have been met except for payment of Providers' final invoices, which may include a flat fee based on an estimate of the time charges for the remaining services required of such Provider, the Plan Trustee may (notwithstanding the foregoing procedures applicable to previous invoices) pay such invoices and proceed to close the Case pursuant to Section 6.12.

**6.9   Limitation on Plan Expenses.**  Notwithstanding anything to the contrary contained in the Plan, except as otherwise agreed by the Plan Trustee in writing, the Plan Trustee shall not be liable for, nor shall assets of the Estate held by the Plan Trustee be subject to, (a) any liability arising after confirmation of the Plan other than a Plan Expense, or (b) any Plan Expense for which the Plan Trustee does not receive an invoice or other form of written notice within sixty (60) days after the incurrence of such alleged Plan Expense.

**6.10    Limitation of Liability.**  Financial obligations of the Plan Trustee are solely in such capacity and payable solely from funds of the Estate.  The Plan Trustee shall have no personal liability for any act or omission other than gross negligence or willful misconduct.  Without limiting the generality of the foregoing, the Plan Trustee may rely and shall be fully protected in acting upon any (or any copy of any) resolution, statement, certificate, instrument, report, notice, request, consent, order or other document which, in the absence of gross negligence or willful misconduct, the Plan Trustee believes to be genuine and to have been signed or (in the case of electronic mail transmittals, faxes, and the like) to have been sent by the proper party.

**6.11    Disputes.**  The Court shall have exclusive jurisdiction over any dispute arising from any act or omission of the Plan Trustee.  Whether or not a dispute has arisen, the Plan Trustee shall have the right at any time to seek an Order providing instructions from the Court concerning any question arising in connection with the performance of the Plan Trustee's duties under the Plan.

**6.12    Closing of Case/Interim Reports.**  At such time as all Unresolved Claims have been Allowed or Disallowed, all Residual Assets disposed of, all distributions made, and all Plan Expenses (including final compensation to the Plan Trustee and Providers) have been paid as specified in the Plan (the "Case Closing Conditions"), the Plan Trustee shall promptly prepare and file with the Court all documents, and shall take all other steps, necessary to close the Case.  The Plan Trustee shall file such reports as may be required by applicable law and rules, *provided, however,* that, except as the Court may otherwise direct, the requirements of MLBR 3022-1(d) shall commence at such time as all Noteholder Claims have been Allowed or Disallowed.

**6.13    Final Decree.**  Following (and notwithstanding) entry of a final decree closing the Case:

(a)    The Plan Trustee shall file a certified copy of the final decree with the Delaware secretary of state, whereupon the Debtors shall, notwithstanding requirements of applicable law, be deemed legally dissolved, and the Delaware secretary of state shall accept such final decree for filing and as conclusive evidence of the dissolution of the Debtors;

(b)    The Plan Trustee shall be authorized to, and shall, prepare and file final state and federal income tax returns for the Debtors;

(c)    The Plan Trustee may at any time, notwithstanding any requirements of applicable law concerning preservation of records, destroy all remaining records of the Debtors and the Estate; and

(d)    To the extent that Estate Funds remain by reason of the provisions of Sections 5.6(c)(vi) and/or 7.5 concerning minimum distributable amounts, the Plan Trustee shall donate such funds to the American College of Bankruptcy Foundation.

# SECTION 7
# CLAIMS AND DISTRIBUTIONS

**7.1  Postpetition Claims.**  Any Administrative Claim still outstanding as of the Postpetition Bar Date shall be forever barred except to the extent that it is the subject of a proof of claim (or, as provided in Section 2.3, an application) filed with the Court on or before the Postpetition Bar Date.

**7.2  Disputed Claims.**

(a)  **No Payment before Allowance.**  Notwithstanding anything to the contrary contained in the Plan, but subject to Section 2.3, no payment shall be made on any Claim until it is Allowed.  If a Claim is Allowed after the date when a distribution under the Plan on account of such Claim would have been payable but for Section 7.2(a) or (c), such distribution shall be made not later than ten (10) Business Days after such Claim is Allowed.

(b)  **Standing to Object.**  After the Effective Date, the Plan Trustee shall be the sole party in interest with standing to object or to pursue any previously-filed objection to any Claim.

(c)  **Objection Deadline.**  The Plan Trustee shall file objections to Claims not later than the Objection Deadline therefor, *provided, however,* that the Plan Trustee may file a motion to extend the Objection Deadline as to any Claim or group of Claims, in which event such deadline shall automatically be extended through and including the later of (i) the fifth (5th) Business Day after the Court enters an Order on such motion, and (ii) the period specified in such Order.  Notwithstanding any other provision of the Plan, a Claim shall not be deemed Allowed unless the Objection Deadline therefor has passed.

(d)  **Reserve for Disputed Claims.**  The Plan Trustee shall hold in reserve the amount of any distribution that would be required under the Plan on account of an Unresolved Claim if it were an Allowed Claim.  The amount of the reserve shall be based on the Asserted Amount thereof.

(e)  **Pro Rata Distributions.**  Whenever the Plan requires *pro rata* distributions among a group of Claims, the Plan Trustee shall make (i) at the time required by the Plan, a distribution of the Pro Rata Share attributable to each Allowed Claim within such group, (ii) within ten (10) Business Days after all Claims within such group have been Allowed or Disallowed and the fund from which Allowed Claims are to be paid has been finally determined, a final distribution of the Pro Rata Share attributable to each Allowed Claim within such group, and (iii) at such times as the Plan Trustee is able to make a material distribution (whether by reason of a decrease in Unresolved Claims or an increase in funds available for distribution) on account of Allowed Claims within the group,

15

an interim distribution of the Pro Rata Share attributable to each Allowed Claim within such group.

**7.3  No Interest.**  Except as expressly provided in the Plan or in Code Section 506(b), no holder of a Claim or interest shall be entitled to any interest, penalty, late charge or costs of collection on account thereof after the Petition Date.

**7.4  Preservation of Recoupment and Setoff.**  No provision of the Plan shall be deemed to waive the Debtors' rights of recoupment and setoff in respect of each and every Claim.

**7.5  Delivery of Distributions.**  Except as otherwise agreed by the Plan Trustee or as set forth in the Plan, distributions to holders of Allowed Claims shall be made by check sent by first class mail with postage prepaid to each such holder at the address set forth in the proof of claim for such Allowed Claim or, if none, the address set forth in the Schedules, *provided* that if the Plan Trustee receives notice in writing of a change of address for any such holder or a transfer of a Claim by a holder, the Plan Trustee shall thereafter remit distributions to the new address or transferee set forth on such notice, as the case may be.  All checks shall be deposited in the mail not later than ten (10) days after the date of the check.  Notwithstanding any other provision of the Plan, the Plan Trustee shall not be obligated to make any single distribution to the holder of an Allowed Claim or interest in an amount less than five dollars ($5.00).

**7.6  Time Bar to Cash Payments.**  If any distribution on account of a Claim is returned to the Plan Trustee as undeliverable, or if a check in payment of the distribution on account of a Claim remains uncashed ninety (90) days after the date of such check, then the check will be voided, *provided*, *however*, that the Plan Trustee shall reissue such distribution if he receives, prior to the date on which such distribution could be made from the Secured Creditor Fund or Unrestricted Funds, as the case may be, without requiring disgorgement of any distribution already made from such funds, notice of the correct address to which such distribution should be sent.

**7.7  Certainty of Estate Obligations.**  In order to provide certainty as to the obligations of the Plan Trustee:

(a) **Amendment of Claims.**  In no event shall the Allowed Amount of any Claim exceed the amount set forth in a required proof of claim therefor filed on or before the Bar Date except to the extent that (i) the claimant, not later than five (5) Business Days before the Effective Date, files with the Court and serves on the Debtors so as to be received by Debtors' counsel on the same day, an amended proof of claim, and (ii) such amendment is not otherwise barred by law or by Order.  In no event shall the Allowed Amount of any Administrative Claim exceed the amount set forth in a proof of claim or fee application therefor filed on or before the Postpetition Bar Date.

(b) **Late-Filed or Informal Claims.**  Each Claim as to which a proof of claim was required to be filed on or before the Bar Date or the Postpetition Bar

16

Date, as applicable, and as to which a proof of claim (or fee application) was not filed on or before such date shall not under any circumstances become an Allowed Claim. A proof of claim or fee application that has not been timely filed shall be of no force or effect whatsoever, including for purposes of any distribution made by the Plan Trustee, without the need for an Order so providing; nor shall any action (including giving notice to the Debtors or otherwise making an "informal" proof of claim) serve for purposes of the Plan and distributions required of the Plan Trustee as a substitute for timely filing a proof of claim.

(c) **Reconsideration.** No Order allowing or disallowing a Claim may be reconsidered, pursuant to Code Section 502(j) or otherwise, so as to increase the Allowed Amount thereof after the later of (i) five (5) Business Days before the Effective Date, (ii) fourteen (14) days after the date an Order allowing such Claim is first entered, or (iii) a date set by Order entered not later than the end of the period established by clause (i) or (ii).

(d) **Unknown Claims.** Notwithstanding anything to the contrary contained in the Plan, if a Claim is filed with the Court on or before the Bar Date or the Postpetition Bar Date, as applicable, but the proof of claim, fee application or other request for payment of administrative expense, as the case may, is not correctly maintained in the Court's records or otherwise does not come to the attention of the Plan Trustee, acting in good faith, in reviewing or making payment on account of Claims, or if the Court for any reason determines the Bar Date or Postpetition Bar Date to be inapplicable to a particular Claim filed or asserted thereafter, payment thereon shall be made as required by the Plan only to the extent such distribution can be made from the Secured Creditor Fund or Unrestricted Funds, as the case may be, without requiring disgorgement of any distribution already made from such funds.

**7.8 Insured Claims.** Notwithstanding anything to the contrary contained in the Plan, solely for the purpose of computing distributions on account of a Claim covered in whole or in part by insurance of the Debtors under which the insurer, upon paying the claim, would not have a right of subrogation or similar right against the Debtors, (a) the Allowed Amount of such Claim shall be reduced by the amount of insurance therefor, and (b) in the case of an Unresolved Claim that, when Allowed, will be wholly covered by such insurance, the Allowed Amount of such Claim shall be deemed to be zero. This Section 7.8 shall not alter the obligation of any issuer of insurance to pay any Claim at its full Allowed Amount, without reduction by reason of this Section 7.8.

**7.9 Allowed Amount Binding.** The determination pursuant to Section 1.3 and 1.23 whether a Claim is Allowed or Disallowed, and if Allowed then in what amount, shall bind the holder of such Claim not only as to the Allowed Amount against the Estate but also as to the liability of any other entity that is, or is asserted to be, liable for such claim. There shall not be recovered on account of any Claim, including the liability of any other entity therefor whether

17

denominated secondary, primary or independent, an aggregate amount (including distributions under the Plan) in excess of the Allowed Amount of such Claim.

## SECTION 8
## EXCULPATION

**8.1    Compliance with Plan.**  Notwithstanding any provision of this Section 8, the Debtors and all other entities shall be required to comply with the Plan in all respects, and no party in interest shall be deemed to have relinquished any right to enforce the Plan in accordance with its terms against the Debtors, the Plan Trustee or any other party in interest.

**8.2    Exculpation**.  Neither the Debtors nor any of their current or former directors, officers, employees, agents, attorneys, other professionals, subsidiaries, other affiliated entities, successors and assigns shall have or incur any liability to any holder of a Claim or interest for any act or omission in connection with, related to, or arising out of the Plan, the disclosure statement therefor, the pursuit of confirmation of the Plan, or any other aspect of the Case, except for willful misconduct or gross negligence.

## SECTION 9
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1    Rejection of Remaining Contracts.**  All executory contracts and unexpired leases of the Debtors as of the Petition Date not rejected prior to the Effective Date or assigned during the Case under Code Section 365 shall be deemed rejected upon entry of the Confirmation Order.

**9.2    Rejection Damage Claims.**  If the rejection of an executory contract or unexpired lease by the Debtors pursuant to Section 9.1 results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be Disallowed except to the extent set forth in a proof of claim therefor filed with the Court on or before the Postpetition Bar Date.

## SECTION 10
## MISCELLANEOUS PROVISIONS

**10.1    Effect of Plan.**  The provisions of the Plan shall bind all holders of Claims and all equity security holders, whether or not they accept the Plan, and any successors and assigns to such holders of Claims and equity securities.  Entry of the Confirmation Order shall be deemed to be a determination by the Court only as to the matters expressly set forth therein and not as to any other matter involving the Debtors, their Estate, and any party in interest in the Case.  All causes of action of the Estate are preserved except as expressly provided in the Plan.  No act or omission in relation to the Plan (including but not limited to solicitation of acceptances of the Plan, statements contained in or omitted from the disclosure statement therefor, entry of the Confirmation Order or occurrence of the Effective Date) shall serve to bar, whether by *res judicata*, collateral estoppel, judicial estoppel or otherwise, the prosecution of any action or objection by or on behalf of the Plan Trustee.

**10.2    Cramdown.**  The Debtors may seek confirmation of the Plan under Code Section 1129(b) as to any class that votes not to accept the Plan pursuant to Code Section 1126(c), is

deemed not to accept the Plan pursuant to Code Section 1126(g), or which the Debtors elect not to solicit to accept the Plan (such class to be deemed not to have accepted the Plan).

**10.3 Discharge; Dissolution.** The Plan is a plan of the type described in Code Section 1141(d)(3) and, accordingly, the Debtors shall not receive a discharge. Disallowed Claims, although not discharged, shall not be entitled to any distribution under the Plan or to receive or retain any assets of or owed to the Estate, whether by way of setoff, recoupment, attachment, levy or otherwise. As provided in Code Section 362(c)(2)(A), the automatic stay shall remain in effect as to the Debtors, the Plan Trustee and all assets of the Estate, until the Case Closing Date.

**10.4 Withdrawal, Amendment or Modification of Plan.** The Debtors may (i) revoke and withdraw the Plan, or propose amendments to or modifications of the Plan under Code Section 1127, at any time prior to entry of the Confirmation Order; and (ii) after entry of the Confirmation Order, modify the Plan under Code Section 1127 or remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of the Plan, so long as the interests of holders of Claims and equity securities are not materially and adversely affected.

**10.5 Effect of Non-Consummation.** If the Plan is withdrawn or revoked, or if confirmation of the Plan is denied by Final Order, the Plan shall be null and void. In such event, the provisions of the Plan may not be used against the Debtors or any party in interest for any purpose whatsoever. Without limiting the generality of the foregoing, the Plan shall be deemed an offer of settlement to all parties in interest, and acceptance of the Plan shall be deemed acceptance of such offer, such that Rule 408 of the Federal Rules of Evidence and any similar provisions of state law shall apply.

**10.6 Severability.** To the extent that any provision of the Plan would, by its inclusion in the Plan, preclude the Court from entering the Confirmation Order, the Debtors may modify or remove such provision without further notice, provided that such removal would not have a material adverse effect on the distribution to any party in interest. Except as set forth in the preceding sentence, the Plan shall be construed as a single integrated agreement, and the Debtors, their creditors, and any other parties in interest shall be conclusively presumed to have relied on all provisions of the Plan and the Confirmation Order for purposes of any future determination of the enforceability thereof.

**10.7 Effective Date; Substantial Consummation.** The Effective Date shall occur whether or not the Confirmation Order has become a Final Order. For purposes of Code Section 1101(2), the Plan shall be deemed to have been substantially consummated once all payments required to be made on the Effective Date, but for Section 7.2(a), have been made.

**10.8 Post-Confirmation Fees.** Fees incurred pursuant to 28 U.S.C. § 1930(a)(6) through the Case Closing Date shall be a Plan Expense, and shall be timely paid by the Plan Trustee.

**10.9 Dates.** Whenever the Plan specifies a date for the Plan Trustee to make any disbursement or take any other action, such action shall be taken on such date or as soon as practicable thereafter.

**10.10  Headings.**  Headings are utilized in the Plan for convenience only and shall not constitute a part of the Plan for any other purpose.

**10.11  Construction.**  The rules of construction set forth in Code Section 102 shall apply to construction of the Plan.

**10.12  Retained Jurisdiction.**  The Court shall retain jurisdiction over the Case after the entry of the Confirmation Order for the following purposes:

(a) to consider and approve any modification or revision of the Plan or the Confirmation Order, pursuant to Section 10.4;

(b) to hear and determine Unresolved Claims and all applications for Professional Claims;

(c) to hear and determine any and all adversary proceedings, contested matters, or other actions commenced or continued by the Debtors or the Plan Trustee;

(d) to hear and determine any disputes arising under the Plan, the Confirmation Order or under any agreements or instruments regarding implementation of the Plan

(e) to grant extensions of any deadlines set forth in the Plan or the Confirmation Order as may be appropriate; and

(f) to make such Orders as are necessary and appropriate to carry out and implement the provisions of the Plan.

Dated this 15th day of February, 2018.

ENUMERAL BIOMEDICAL HOLDINGS, INC.,
ENUMERAL BIOMEDICAL CORP. and
ENUMERAL SECURITIES CORPORATION,

By their proposed attorneys,

*/s/ Daniel C. Cohn*
Daniel C. Cohn, Esq. BBO #090780
Jonathan M. Horne, Esq. BBO #673098
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, MA  02110
(617) 457-4000 Telephone
(617) 482-3868 Facsimile
dcohn@murthalaw.com
jhorne@murthalaw.com